**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KENNETH LUMAN and TONYA LUMAN,

    Plaintiffs,

vs.                                                 No. 2:20-CV-00200-WJ/CG

BALBACH TRANSPORT INC. and LUIS TREJO,

    Defendants;

LUIS TREJO,

    Counterclaimant and Third-Party Plaintiff,

vs.

KENNETH LUMAN and GREENWOOD MOTOR LINES, INC.

    Counter-Defendant and Third-Party Defendant;

BALBACH TRANSPORT INC.

    Counterclaimant and Third-Party Plaintiff,

vs.

KENNETH LUMAN and GREENWOOD MOTOR LINES, INC.

    Counter-Defendant and Third-Party Defendant;

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon motion by Defendants Balbach Transport Inc. ("Balbach") and Luis Trejo ("Trejo") (collectively referred to herein as "Movants") for Partial Judgment on the Pleadings for Failure to State a Claim, filed July 2, 2020 (Doc. 36). Movants

claim that Plaintiffs Kenneth Luman ("Luman") and Tonya Luman (collectively referred to herein as "Respondents") do not satisfy federal pleading standards as to the Count 3 negligence claims of the Amended Complaint (Doc. 33)[1] asserting that Balbach was negligent in hiring, training, supervising and entrusting Trejo with the tractor/trailer rig he was driving at the time of the collision which forms the basis of this lawsuit. Doc. 33 at 8-9. Having reviewed the parties' pleadings and the applicable law, the Court finds that Movants' Motion survives Respondents' procedural contentions and that those portions of Count 3 of the Complaint asserting claims against Balbach pertaining to negligence in hiring, training, supervising and entrusting fail to appropriately plead the claims around which they revolve.

## BACKGROUND

This personal injury lawsuit arises from a collision involving two tractor/trailer rigs, one driven by Trejo and the other one driven by Luman, on the afternoon of March 6, 2019 in Las Cruces, New Mexico. Doc. 1-5 at 1. According to the Complaint, Luman was driving a commercial motor vehicle behind the commercial motor vehicle being driven by Trejo. Doc. 33 at 2. Trejo approached stopped traffic and signs indicating a lane closure, and was forced to the road's shoulder while activating his brakes. *Id*. at 3. Luman did the same, and in so doing his vehicle collided with the right-rear portion of Trejo's trailer, resulting in serious injuries to Luman.[2] *Id*. New Mexico State Police attributed the accident to "driver inattention" and "following too closely," not clearly delineating which parties were suspected of which factors. Doc. 1-5 at 2.

---

[1] The electronic docket sheet identifies Document 33 as "Amended Complaint" although the document itself is titled "Original Complaint." Amended Complaint is a more accurate description of Document 33 because the Court, in Document 32, granted Plaintiffs' Unopposed Motion (Doc. 30) to file an Amended Complaint. However, in order to avoid confusion, the Court shall refer to this pleading as the "Complaint."

[2] Luman was transported by emergency helicopter, and now claims damages for, inter alia, disfigurement, pain and suffering, loss of enjoyment of life and aggravation of preexisting conditions/injuries. Doc. 1-6 at 1; Doc. 33 at 9.

The Complaint in Counts 1 and 2 alleges causes of action against Trejo, including negligence and negligence per se, and Count 3 alleges (in addition to Respondeat Superior, the propriety of which is not considered here) claims of negligent hiring, negligent entrustment and negligent training and supervision against Balbach, stating in relevant part that Balbach failed to (1) "exercise the requisite care, skill, and expertise as would an ordinary person when hiring, retaining, entrusting a vehicle to, and training (or rather not training) Defendant Trejo," (2) "exercise reasonable care and acted negligently when hiring Defendant Trejo," (3) "properly supervise and train Defendant Luis Trejo for the duties that Balbach Transport could foresee and expect Defendant Luis Trejo to perform in the course of his employment," and that Balbach (4) "knew or should have known that Defendant Luis Trejo was likely to use the vehicle in such a manner as to create an unreasonable risk of harm to others and [that] Defendant Trejo was negligent in the operation of the tractor and trailer at issue." Doc. 33 at 8; Doc. 36 at 3.

**LAW**

A party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). A motion asserting the affirmative defense of "failure to state a claim upon which relief can be granted" that was filed after the movant filed an answer to the complaint should be treated generally as a motion for judgment on the pleadings. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002); *see Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 n.5 (10th Cir. 1998). Courts within the Tenth Circuit have held that such motions filed *after* the movant has answered may be considered as a Fed. R. Civ. P 12(b)(6) Motion to Dismiss. *See Rogers v. D.F. Freeman Contractors, Inc*., 1989 WL 134280, at *1 (D. Kan. 1989) (12(b)(6) motions may be considered by the court even when interposed after the responsive pleading has been filed) (citing Wright & Miller, Federal Practice and Procedure:

Civil, § 1361) (internal quotations omitted); *see also Miller v. Cudahy Co.*, 656 F. Supp. 316, 322-23 (D. Kan. 1987) ("The language of Rule 12(b) . . . must be read in conjunction with the language of Rule 12(h)(2), which preserves Rule 12(b)(6) motions from waiver and permits such motions to be made at any time up to and including trial.").

A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under 12(b)(6), and is restricted to the content set forth in the pleadings. *See Freeman v. Department of Corrections*, 949 F.2d 360, 360 (10th Cir. 1991). When courts consider a Rule 12(c) motion, the facts set forth in the pleadings and the inferences drawn therefrom are to be viewed in the light most favourable to the nonmovant, and well-pleaded factual allegations in the non-movant's pleadings are to be taken as true. *Id*. A court has the authority to dismiss a complaint for "failure to state a claim upon which relief can be granted," and the sufficiency of a complaint is a matter of law. Fed. R. Civ. P. 12(b)(6); *Moore v. Guthrie*, 428 F.3d 1036, 1039 (10th Cir. 2006). A complaint is subject to dismissal if it does not possess "enough heft to show that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citing Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted).

For a complaint to survive the motion to dismiss, it must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face. *Id*. at 570. A claim can only be facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). If a plaintiff's stated facts permit the court to infer "more than the mere possibility of misconduct," then the complaint properly states a claim; however, if the claim is not nudged by

the facts "across the line from conceivable to plausible," the complaint must be dismissed. *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018); *Twombly*, 550 U.S. at 570.

The Tenth Circuit has since explained the following:

> The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

*Robbins v. Oklahoma*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Thus, a plaintiff must frame his complaint with enough factual matter as to suggest that he is entitled to relief, *See Twombly*, 550 U.S. at 556, and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (applying *Twombly*).

## I. Timeliness of the Motion

Respondents contend that Movants' motion is premature because Rule 12(c) only authorizes a motion for judgment on the pleadings after the pleadings have closed and no material fact issues are in dispute. Doc. 42 at 4. The subject motion was filed prior to the Respondents' deadline to amend pleadings (September 3, 2020), and accordingly Respondents believe the motion is untimely. However, September 3rd has come and gone, and notwithstanding, pleadings are considered *closed* for the purposes of Rule 12(c) "once a complaint and answer have been filed." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). While a counterclaim was filed in this case, arguably limiting to an extent *Doe*'s precedential value, Respondents have since responded to the counterclaims (Doc. 15), and such response is sufficient to close pleadings under Fed. R. Civ. P. 7(a), which sets forth the list of permissible pleadings: (1) a complaint, (2) an answer to a complaint, (3) an answer to a counterclaim designated as a counterclaim, (4) an answer to a crossclaim, (5) a third-party complaint, (6) an answer to a third-party complaint, and (7), if

court ordered, a reply to an answer. Of the pleading-types applicable here, proper filing and response has been made; a deadline to amend is not determinative of the *closing* of pleadings, and thus, Movants' Rule 12(c) motion is not untimely. *See Flora v. Home Federal Sav. & Loan Asso.*, 685 F.2d 209, 212 n4 (7th Cir. 1982) ("when, in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply.") (citing 2A Moore's Federal Practice P12.15 (2d ed. 1982)).

## II.     Judicial Estoppel

Respondents' next contention is that Movants' Motion is inconsistent under *Autos, Inc. v. Gowin*, and thus, Movants are judicially estopped from claiming Respondents' pleadings do not satisfy the pleading rules, noting Movants' use of seemingly borrowed language from Respondents' original Complaint. 244 Fed. Appx. 885, 890 (10th Cir. 2007) (unpublished) ("'Judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation.'") (quoting *Rascon v. U.S. West Commc'ns, Inc.*, 143 F.3d 1324, 1330 (10th Cir. 1998)). This argument fails.

Judicial estoppel is an unusual doctrine; it is a discretionary remedy that allows courts "to prevent improper use of judicial machinery," *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)), and has been vitalized by the Tenth Circuit in the context of bankruptcy proceedings. *Id*. As a general principle, the Tenth Circuit has refused to accept the doctrine of judicial estoppel altogether. *See Autos, Inc. v. Gowin*, 330 B.R. 788, 794 (D. Kan. 2005) (The Tenth Circuit "has traditionally refused to apply judicial estoppel."); s*ee also Rascon v. U.S. West Communs*. 143 F.3d at 1332 ("Moreover, this court has repeatedly refused to adopt the doctrine of judicial estoppel . . . " and "[t]he district court noted that the doctrine of judicial estoppel has been rejected in this circuit, and, therefore, refused to apply the doctrine to bar Mr. Rascon's claim. On appeal, [we are

invited] to adopt judicial estoppel [here], but we decline."); *see also Parkinson v. California Co.*, 233 F.2d 432, 437-38 (10th Cir. 1956), *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1520 n.10 (10th Cir. 1991) and *Smith v. Midland Brake, Inc.*, 138 F.3d 1304 (10th Cir. 1998) (each rejecting the doctrine of judicial estoppel). However, while the doctrine was considered archaic in this way for many years, the Tenth Circuit has since "recognized the vitality of the doctrine in the specific context of bankruptcy proceedings." *Id*. at 890. For instance, in *Eastman v. Union Pacific Railroad Co.,* 493 F.3d 1151 (10th Cir. 2007), the Tenth Circuit denied discharge to a Chapter 7 debtor "who swept his personal injury suit under the rug before the bankruptcy court only to assert it later in the district court," ultimately concluding that the debtor could not attain discharge "in the face of such deliberate nondisclosure." *Id*. (citing *Eastman*, 493 F.3d at 1159) (internal quotations and citations omitted). In making this bankruptcy determination, the Tenth Circuit analyzed the following factors from *Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1069 (10th Cir. 2005):

> (1) The party against whom judicial estoppel is to be invoked seeks to rely on a position that is clearly inconsistent with its earlier position; (2) [t]he party has succeeded in persuading a court to accept its earlier position, such that judicial acceptance of an inconsistent position would create the impression that either the first or the second court was misled; and (3) [t]he party seeking to assert the inconsistent position would derive an unfair advantage *or* impose an unfair detriment on the opposing party if not estopped.

244 Fed. Appx. at 890 (citing *Johnson*, 405 F.3d at 1069) (emphasis in original). Though judicial estoppel is unreasonable given the niche contexts in which it only fits, this Court will accept *Johnson*'s factors as, at the very least, informative of the elements necessary for contradictory claims to warrant judicially enforced equitable measure.

In essence, Respondents' argument lends itself only to *Johnson* factor (1), though it does so incorrectly as explained below, and *Johnson* factors (2) and (3) are certainly not present in the

case at bar. This is because the Court has neither been persuaded to accept a position, as the subject language is only a standard recitation of claims, nor would any advantage result from a granting of partial summary judgment on proper grounds, as Respondents' claims in Count 3 of the Complaint fail simply because they do not meet the pleading requirements of *Twombly* and *Iqbal*.

Furthermore, Movants' counterclaims against Respondents, or Plaintiffs, do not represent the kind of hypocrisy or inconsistency with which they have been charged and which Respondents may argue fall squarely within the umbrage of *Johnson* factor (1). It does appear that, in response to the allegations by Respondents, Trejo has employed perhaps equally unfounded allegations in his own defense as part of his answer to the Complaint. Respondents contend that by virtue of Trejo's alleged inability to notice stopped traffic that there is a factual basis to assume he was negligently hired and improperly trained and supervised, and that Balbach knew or should have known this to be the case. Trejo, using the same language, contends that by virtue of Luman's following distance and inability to stop his vehicle that there is a factual basis to assume Luman was negligently hired and improperly trained and supervised, and that his employer, Greenwood Motor Lines, Inc. ("Greenwood"), knew or should have known this to be the case. However, this Court cannot know whether the parties' contentions are wholly similar, in both verbiage and context, without a separate inquiry into Trejo's argument as the text applies to his perspective of the accident. Accordingly, the Court finds that the doctrine's purpose, to empower a court to estop inconsistent judicial improprieties in favour of an equitable result, is not elicited here.

For this reason, Respondents' argument under Fed. R. Civ. P. 11(b)(2)–(4) fails as well. Rule 11(b)(2)-(4) requires that by presenting a pleading, motion or otherwise paper to a court, an attorney certifies that to the best of his knowledge, the claims, defenses and legal contentions therein are warranted by existing law, the factual contentions therein have evidentiary support, and


the denials of factual contentions therein are warranted on the evidence. Rule 11(b)(2)–(4). Yes, assuming that an attorney's obligations under Rule 11 could be extended to the applicable claimant party, by signing their Answers/Counterclaims/Third-Party pleadings, including the portions they borrowed from Respondents' pleadings, Movants represent to the Court that their legal contentions are warranted and that their factual contentions and denials thereof have evidentiary support. *See id.* Presumably, according to Respondents, if Trejo states that his own contentions are warranted and supported, then he cannot logically state that Luman's claims, which are identical to Trejo's claims, are without sufficient factual basis. But, this approach fails to observe that while Trejo and Luman both use the same words in formulating their arguments, the supporting facts, and thus the foundations of the arguments, are themselves not necessarily the same. It should be noted that egregious conduct—conduct so egregious that its very nature is indicative of a patent lack of training and oversight—may be enough in and of itself to permit a court to infer liability under *Twombly* and *Iqbal*, and, based on the circumstances as Trejo saw them at the time of the subject accident, he may believe wholeheartedly that the facts, namely Luman's driving behavior, meet this criteria and are sufficient themselves to support his claims while simultaneously believing that the facts as they relate to his own behavior do *not* support Luman's identical argument. In this hypothetical, whether or not Luman is right to believe this doesn't matter; using the same words to make the same allegations is no basis for judicial estoppel where the contextual perspective of the parties may legitimately differ.

Finally, Respondents' argument also fails because it was only Trejo who borrowed language from the original Complaint with respect to the charges at bar. Balbach is likewise targeted by the language in question, and this Court finds that it is not sensible to estop a legitimate and substantiated motion as to both Movants merely because one such party recycled the language

of the Respondents as to certain contentions that are overbroad with respect to the original Complaint.

### III. Waiver

Respondents next contend that Movants waived their argument that Respondents' pleadings do not satisfy the pleading rules. Specifically, Respondents believe that denial (set forth in an Answer) is necessarily an admission that the facts being denied are sufficient to state a claim. This argument misunderstands the holdings of *Twombly* and *Iqbal*, which state that a claim can only be facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Cummings*, 913 F.3d at 1238, and that, if a claim is not nudged by the facts "across the line from conceivable to plausible," the complaint must be dismissed. *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018); *Twombly*, 550 U.S. at 570.  Respondents' argument then is essentially that a claim can only be denied by a defendant if it is facially plausible and not merely conceivable. The Court disagrees; a defendant faced with considerable allegations of willful negligence cannot be barred from denying conceivable facts asserted against him, even though those facts are implausible and ultimately unsupported by evidence available to the plaintiff, and absent activation of a formal waiver mechanism, this Court does not find Movants to have waived their argument by virtue of doing exactly that.

Interestingly, Respondents state that "the Court should use its discretion to preclude [Movants'] gamesmanship and deny [Movants'] Motion," referring, of course, to how Movants "[h]ypocritically" employed the same *offense* as Respondents. Doc. 42 at 5 and 2. However, in Respondents' reply to Movants' counterclaims of employer negligence, Respondents employ the very same *defense* as Movants—the very same defense that Respondents now allege waived

Movants' rights to make the subject motion. Respondents stated, in response to Movants' counter-allegations that *Greenwood* was negligent in the hiring, training, and supervising of Luman (set forth in Paragraph 32 of Doc. 8)—the exact allegations Respondents initially made of Balbach—that Luman "denies all allegations contained in Paragraph 32 of the Counter-Complaint . . . " and nothing more—no qualifications as to Paragraph 32 (and the same as to Paragraph 14). Doc. 9 at 5. By Respondents' own logic, in denying Movants' allegations in this way, Luman will have admitted to the sufficiency of Movants' contentions under *Twombly* and *Iqbal* by having denied them, and were the Court to accept Respondents' argument that hypocrisy was dispositive of judicial estoppel, it would bar any responsive summary judgment motion Respondents may make as to Movants' allegations. This is not because Respondents used the same defenses as Movants, but because Respondents did so and then alleged that to make an argument that the allegations addressed by these denials should be dismissed is barred by judicial estoppel as an inconsistent claim.

Movants have not waived their right to make the subject motion.

### IV.     Failure to State a Claim

Having determined that Movants' Motion for Partial Judgment on the Pleadings for Failure to State a Claim was timely filed and that the doctrines of judicial estoppel and waiver are not applicable to this motion, the Court now turns to the merits.

Movants seek dismissal of certain of Respondents' claims and causes of action asserted against Balbach as set forth in Count 3 of the Complaint, contending that they are legally and factually defective and fail to meet the pleading requirements of *Twombly* and *Iqbal*. Specifically, Movants argue that the claims relating to negligent hiring, negligent entrustment, and negligent training and supervision rely on conclusory recitations rejected under *Iqbal* and further, by this

Court. *See Iqbal*, 556 U.S. at 678 ("Theadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Paris Heard v. Loughney and New Prime, Inc. d/b/a Prime, Inc.*, 2017 WL 3328185 (D.N.M. Jul. 14, 2016). The Court agrees.

To reiterate the facts and state clearly Respondents' allegations:

FACTS

(1) On March 6, 2019, Trejo was driving a commercial motor vehicle in Las Cruces, New Mexico, and Luman was driving a commercial motor vehicle behind him. Doc. 1-5 at 1; Doc. 33 at 2.

(2) Trejo approached stopped traffic and signs indicating a lane closure and was forced to the shoulder while activating his brakes. Doc. 33 at 3.

(3) Attempting to do the same, Luman collided with Trejo's vehicle, resulting in considerable damage and injury to Luman. *Id*.

(4) New Mexico State Police attributed the accident to "driver inattention" and "following too closely," not clearly delineating which parties were suspected of which factors. Doc. 1-5 at 2.

RESPONDENTS' ALLEGATIONS

(1) Trejo's employer, Balbach, maliciously, willfully, recklessly, and with gross negligence and/or wantonness:

   a. Failed to train, supervise, direct or control its employee with requisite care, skill and expertise as would a reasonable employer;

   b. Failed to comply with all applicable laws;

    c.  Failed to comply with its own rules and policies with regard to hiring, training, monitoring, performing tests on, disciplining and terminating employees;

    d.  Negligently training and supervising employees;

    e.  Negligently entrusting a vehicle to Trejo;

    f.  Negligently hiring Trejo; and

    g.  As a result of Balbach's negligence, causing the accident, injuries and damages.

Doc. 33 at 7-9. In support of these claims, Respondent refers to the Federal Motor Carrier Safety Regulations ("FMCSR"), and specifically, FMCSR 383.111(7) and (9), as well as 383.113(c), which state, in relevant part, that motor carrier drivers must be knowledgeable in visual search, speed management, space management and maintaining safe following distances depending on various road conditions.

**(A) Negligence Per Se**

Count 2 of the Complaint asserts a negligence per se cause of action against Trejo. While the Complaint does not allege that Balbach was negligent per se, the Court will analyze this cause of action for two reasons. First, Respondents allege that Trejo was negligent per se, and Balbach's liability is hinged upon Trejo's conduct. Second, Respondents offer no legitimate factual support for their contentions regarding Balbach's alleged negligent conduct other than asserting the accident in fact occurred (in alleged violation of the FMCSR); this is tantamount to a claim of negligence per se on the part of Balbach.

To state a claim of negligence per se, Respondents must allege (1) "a statute that prescribes certain actions or that defines a standard of conduct," (2) "a violation of the statute," (3) "a statute

that protects a class of persons, including [Luman]," and (4) "some harm or injury to [Luman] that must generally be of the type the legislature, through the statute, sought to prevent." *Loughney*, 2017 WL at *8 (citing *Fitzgerald v. Valdez*, 77 N.M. 769, 774-75 (1967)).

Because the subject motion refers only to those charges against Balbach for negligent and improper training, hiring and supervising of Trejo, the Court has reviewed and analyzed only those statutes which Respondents allege may have been violated by Balbach:

> [T]he Federal Motor Carrier Safety Regulations ("FMCSR") require motor carriers to ensure that their drivers are knowledgeable in visual search (including seeing ahead and to the sides); speed management (including stopping distance, visibility, and traffic flow); space management (controlling the space to the front and rear of the commercial motor vehicle); and in their ability to maintain a safe following distance depending on various road conditions.

Doc. 42 at 7 (citing CFR 383.111(7), (9); 383.113(c)). CFR 383.111(7) requires commercial motor vehicle ("CMV") operators to have knowledge in visual search; CFR 383.111(9) requires CMV operators to have knowledge in speed management; and 383.113(c) requires CMV operators to have skills in safe on-road driving (to include employment of proper visual search methods). According to Respondents, Balbach failed to ensure that its driver, Trejo, met these criteria. Thus, Respondents may meet their first elementary burden under *Valdez*. 77 N.M. at 774-75.

However, Respondents fail to allege the second element. With respect to the above regulations and to the CFR's regulations on carriers broadly, the Complaint fails to give Balbach notice as to how its conduct supposedly violated the specific regulations. For example, Respondents do not allege that Balbach failed to conduct an inquiry into Trejo's records or explore Trejo's previous employment history, nor do Respondents allege that, at the time of the accident, Trejo had no requisite documentation, a lack of which may have made Balbach aware of a suspect driving history. All Respondents offer are conclusory allegations of causation; Respondents

essentially state that Balbach's wrongful acts led to Luman's foreseeable harm, but Respondents do not allege, for example, that Balbach failed to keep adequate records and failed to have Trejo evidence his training in those skills required under CFR 383.111. Further, even if Trejo's use of his brakes and removal of his vehicle to the shoulder of the road was enough, on its own, to establish that Balbach, by extension of Trejo's behavior, violated applicable regulations, "a violation itself is not conclusive of causation." *See Loughney*, 2017 WL at *8 (quoting *Pedroza v. Lomas Auto Mall, Inc.*, 600 F. Supp. 2d 1200, 1208 (D.N.M. 2009) (applying New Mexico law on summary judgment motion)). Respondents' failure to identify the conduct of Balbach that caused the injuries to Luman "prevent the Court from drawing a reasonable inference that [Balbach] is liable for the misconduct alleged. In other words, even accepting [Respondents'] claims as true, the factual allegations in support of the negligence per se claim against [Trejo] are not enough to raise a right to relief above the speculative level" as to Balbach. *Id.* at *11 (internal quotations omitted). Furthermore, "threadbare recitals" as to alleged violations of applicable statutes and causation "are conclusory and do not suffice," and the allegations set forth in the instant case are certainly threadbare—they offer a vague allegation of violation with nothing more to permit this Court to infer liability. *Id.* at *12. While Respondents contend that the discovery process may enable it to elucidate the facts further, Respondents failure as yet to even reasonably support their claims imply that this is the very kind of "fishing expedition" that the standards set forth in *Twombly* and *Iqbal* sought to prevent. *Id*. (citing *Nickell v. Bank of Am., N.A.*, 2012 WL 394467, at *11 (W.D. Tenn. Feb. 6, 2012) (noting that the plaintiff's assertion of the potential availability of additional information during discovery indicated that their claim was the sort of fishing expedition that the Supreme Court's plausibility standard was intended to prevent).

### (B) Negligent Hiring, Supervision, Training and Entrustment

Respondents contend that Balbach was negligent in hiring, supervising, training and entrusting a vehicle to Trejo. Specifically, Respondents allege that Balbach owes a duty to the public to run its business safely and make use of its property in a reasonable manner using the degree of care and skill as would an ordinary person, and that this duty was breached when Balbach hired Trejo and allowed him to use the commercial vehicle in question. Doc. 33 at 7. Further, Respondents contend that Balbach knew or should have known that Trejo was likely to conduct himself negligently in the scope of his employment and use the vehicle in an unsafe manner. *Id.* at 8. In addition to Respondents' charges of negligence, they contend that Balbach failed to comply with its own rules and policies with regard to hiring, monitoring and training employees, and violated applicable laws, ordinances and regulations relating to commercial transport. *Id.* In support of these allegations, Respondents offer a handful of facts (some of which are not set forth herein because they are fundamentally conclusory in nature and are not facts, such as: "Trejo was negligently hired, trained and supervised by Balbach in that he was not fit to be a professional truck driver"). *See Id.* at 2. These facts are as follows: (1) Trejo did not see stopped traffic and signs, (2) Trejo was forced to "skid" to the shoulder while employing his brakes, (3) Luman was driving behind Trejo and was forced also to employ his brakes and move to the shoulder, (4) Luman collided with Trejo, and (5) Luman sustained injuries and his wife has lost consortium as a result thereof. *Id.*

Even viewed in the light most favourable to Respondents and accepted as true, none of the above facts are sufficient to conclude that Balbach violated its duty of care or knowingly employed a driver who was likely to behave negligently when entrusted with a commercial vehicle, and none even relate to Balbach's internal policies or procedures with regard to vetting or supervising its

employees. Rather, though these facts may be enough to properly allege that Trejo himself acted negligently in the use of the vehicle (notwithstanding that Luman may have been driving too closely behind Trejo to stop his own vehicle in contravention of his claims as to the FMCSR, which requires that commercial drivers possess the ability to maintain a safe following distance depending on various road conditions), these facts are not remotely sufficient to state a claim as to Balbach's negligent hiring, supervision, training or entrustment to Trejo. *See Twombly*, 550 U.S. at 556 (a plaintiff must frame a complaint with enough factual matter as to suggest that he is entitled to relief); *see also Robbins*, 519 F.3d at 1247 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

As the Supreme Court has stated, and as this Court has reiterated, a plaintiff "must offer more than an 'unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Loughney*, 2017 WL at *13 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare conclusions," that is, conclusions which fail to give rise to a plausible inference that Balbach negligently (or recklessly) hired, supervised, trained or entrusted Trejo, are insufficient to permit the Court to conclude that Respondents' subject claims in Count 3 are plausible on their face. *See id.*; *see also Baker v. Thomson*, 2011 WL 5221273, at *2 (D. Colo. Nov. 2, 2011) (likewise dismissing a similar unsupported claim of negligent hiring and supervision). While further discovery may, by utter happenstance, support Respondents' claims, "it is improper to use the discovery process as a fishing expedition," as Respondents seek to do. *See Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 887482, at *6 (S.D. Ala. Mar. 15, 2012) (rejecting the plaintiff's "wing and a prayer" approach to bringing a claim with the hopes of possibly discovering facts to support an argument or broaden potential damages), reconsideration denied, 2012 WL 2395194 (S.D. Ala. June 22, 2012). Accordingly, the

Court dismisses without prejudice the following of Respondents' claims as set forth in Count 3 of the Complaint:

a. Negligently hiring Defendant Trejo;

b. Negligently entrusting a vehicle to Defendant Trejo;

c. Negligently training and supervising agents and employees, including Trejo;

d. Failing to comply with their own rules and policies with regard to hiring, training, monitoring, performing tests on, disciplining, and terminating employees;

e. Failing to comply with all applicable laws, ordinances, rules, and regulations;

f. Failing to train, supervise, direct, or control their employees with the requisite care, skill, and expertise as would a reasonable employer.

Doc. 1-1 at 6.

## CONCLUSION

Respondents' allegations support only the arguable claim that Trejo himself made a mistake while driving or was negligent per se. The occurrence of a generic vehicle accident, however, is not alone prognostic of an employer-carrier's negligence in training, supervising, hiring or entrusting its drivers, and Respondents have not alleged facts with which the Court could begin to infer that this kind of negligence occurred. For this reason, as well as those described in this Memorandum Opinion and Order, Movants Trejo and Balbach's Motion for Partial Summary Judgment on the Pleadings for Failure to State a Claim is hereby **GRANTED**, thereby dismissing

without prejudice the claims alleged in Count 3 of the Complaint against Balbach, excluding the claim of vicarious liability/Respondeat Superior.

    **IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE